Good morning, your honors, and may it please the court. Daniel came for the United States. I'd like to reserve two minutes for rebuttal, and I will watch the time. Okay. Or he could find that Mr. Weiss's October 2nd, 2018 email was a true threat. The reasonable sender would foresee it being interpreted as a serious expression of intent to harm, and that Mr. Weiss intended that it be interpreted that way. If this court agrees, or even just thinks it's a closed call, that means this is not one of the few cases that are so clear that they can be resolved as a matter of law before trial, and that's why the district court's order should be reversed. To start, there's the email itself. If you push this for Friday, the resistance is coming to D.C. to slash your throat. You will die in the street by D.C. resistance, mother blank. You will not live to regret it. That's a threat. It was designed to put Senator McConnell in fear of bodily harm or death so that he wouldn't allow a vote on Justice Kavanaugh's confirmation. To avoid that conclusion, I think you'd have to conclude, as the district court did, that the email's really about what other people would do and not what Mr. Weiss would do. But that's not what the email says. It doesn't say one way or the other whether the resistance is other people. Instead, it professes specific knowledge about what the resistance is going to do, and it appears to sympathize with its objectives. That's all suggestive of affiliation with the resistance. And then there's the context. First, the email ostensibly came from Turtle the Resistance Will Be There Fry to Kill You at Hotmail.com in Louisville, Kentucky. So that's somebody identifying themselves with the resistance and somebody who's not currently in D.C. and so would have to come to D.C. Let me stop you there. Why do you think that the email address associates the sender with the resistance? The address is obviously just kind of a made-up address that summarizes the subject of the email. It's not like the person said, I can't remember what her name is, but, you know, firstname.lastnameatresistance.org or something. That I think I can understand a little bit better. But why do you think this email address is so evocative of the person being associated with that entity? Right, Your Honor. I don't dispute that it's probably a spoofed email, and that's how it would be interpreted. But I do think people use email addresses as identifiers, and not just the domain registration, not just the Hotmail.com portion of Resistance.org, but the names at the front end. People commonly use affiliations and names at the front end of emails, and this is somebody who's used the resistance in the identifying portion of the email address. So I think that is at least marginally suggestive of affiliation with that group. I don't think it's dispositive, but I do think it's marginally suggestive of somebody associating themselves with the group. It's not a real email address, is it? I don't know if it is, Your Honor. I don't know if we have the record on that, whether this was an email address that Mr. Weiss actually created or not. I think it's fair to assume that it's at least spoofed, even if it was actually created. But it's probably not his default email address. I think that's probably a fair inference. But I don't think that materially diminishes the significance of the affiliation. It's somebody conveying that they are affiliated with. It's somebody who's conveying an association with the organization that, here, the email says, we'll commit this act of violence. Could I ask a background question about Planned Parenthood? Can you explain what your interpretation is of what the jury gets to decide and what we are supposed to decide? When we're looking at this email address and trying to figure out if it conveys anything, is that a question for the jury or a question for us? Right, Your Honor. Well, of course, our argument at this stage is Planned Parenthood doesn't even kick in here. Planned Parenthood is a question about how this court would review a jury's finding of constitutional facts. But partly that's about whose role is it. And, I mean, how we review turns on who gets to decide what. And I'm really struggling to understand who's supposed to decide what here. That's right, Your Honor. I think the line that this court drew has drawn in Planned Parenthood in every subsequent case concerning true threats is that the jury in the first instance gets to decide whether a statement is a true threat. The jury can be asked via special verdict form whether a statement qualifies as a true threat. And then this court, on review after a Rule 29, on a sufficiency review, instead of applying its normal deferential sufficiency standard, the Jackson standard that this court applies everywhere else, applies a more searching form of review, an independent review, to assess whether the jury's findings as to the true threat are sufficient. And it's a less deferential standard than you would normally apply. However, the court would defer to the jury's findings credibility, particularly if a witness testified. And I think that's really the key here, right? If the case gets to the jury, the jury gets to decide if they say, in this case, believe Mr. Weiss as to his subjective intent. At the front end, I don't think Planned Parenthood is really apt as it. The question at the front end is, is this so clearly not a true threat that the government couldn't possibly do sufficient evidence such that a jury could find a true threat? So what additional evidence would you present if this case were to go to trial, other than the messages themselves? Right, Your Honor. So I think the key evidence would really be on the subjective prong, right? This court applies it to a two prong test. Counsel, that's not what we're talking about. We're talking about the objective prong. I think that's I have the same concern that Judge Friedland and it sounds like maybe Judge Pius is right here. If we're talking about the objective prong, we've got pretty much the four corners of the email. And what other evidence on the objective prong would you be able to introduce? So, Your Honor, let me give an example. In both Planned Parenthood and Kaiser, in assessing the objective, those are cases, both of which we cited in our brief. In assessing the objective prong of the true threat inquiry, this court considered various pieces of context that might be indicia of whether the statement is a true threat. In both of those cases, the court considered background information that a reasonable recipient might have. So in Planned Parenthood, it's the fact that abortion providers have previously been murdered. In Kaiser, it's the fact that there are all these news reports about anthrax being sent to people. Likewise, here, there might be evidence, there might be background evidence about, say, reporting about whether there are serious threats to members of Congress, or it could cut the other way. There could be evidence that everybody knew that the resistance was traveling to D.C. on Friday, October 5th. And so this is the kind of thing that anybody would know about. You say there might be evidence, but you've been thinking about this case for a long time. So what would be the additional evidence, other than the messages, that would provide the background context that you're talking about to show, to satisfy the objective prong? Right. Although it's not in the record, Judge Paius, we do identify in the brief several examples of news reports of actual threats being received by members of Congress. And that's the kind of thing that would qualify as relevant conduct, I'm sorry, relevant context in the objective prong inquiry under Kaiser and Planned Parenthood. Counsel, that evidence, though, goes to whether somebody would perceive this as a threat of harm to them. But what we're talking about is whether the sender has conveyed some kind of an indication that they're affiliated with the people who are predicted to do the harm. And it seems to me, again, that that is going to turn on what's in the e-mail. I don't think, I can't think of any other contextual evidence that you could introduce that would be brought to bear on that kind of sub-issue within the objective prong. I understand, Your Honor. And if this panel were to think there is no conceivable way that the jury could find that Mr. Weiss was suggesting an affiliation in his e-mail with the resistance, I think this court could affirm. But I really would like to explain why I don't think that's an inference that this court should draw at the pre-trial stage, leaving aside the pre-trial trades or at the post-trial stage, that no rational jury could make that conclusion. If I can quickly just run through a couple more reasons why I think that is, because I think that really is the heart of this, as I think Judge Watford's question suggests. The second point is that, returning to the points before, Senator McConnell's staff actually did perceive this as a threat. That's at page 84 in the record. They actually perceived this as a threat. And, of course, that's suggestive of the fact that it's a threat. And then, finally, I don't think that this court can, as a matter of law, lean on. I see I'm actually, I've only got a minute and a half left, and I'd like to reserve the two minutes for rebuttal. And I'll give you a minute or two for rebuttal. Thank you, Your Honor. If I can just quickly run through why I don't think that, as a matter of law, Bagdasarian is going to control the outcome here. That's because I think there are three key reasons why Bagdasarian's inapposite. The first is that the statement in Bagdasarian was posted on a Yahoo Finance message board. Nobody who's seriously hoping to frighten President Obama would post a message on that board. And this court said in Planned Parenthood that a privately communicated threat like this one is generally more serious than a diffuse public threat. I think that's a really significant difference here. Second, the statements itself. Unlike the statement in Bagdasarian, which was, Ray Obama, F the N word, he will have a .50 cal in the head soon, this statement has much greater specificity, not just about the means of the murder, but also the time and place. That is suggestive of affiliation with resistance. That's the kind of knowledge that planners have, where and when something's going to happen. Not that it's dispositive, but that's suggestive. That's the kind of fact that a jury could rely on to find a true threat on the objective prong. Third, the conditionality of the statement here. We know exactly what the speaker here is after. Unlike the statement in Bagdasarian, we know exactly what Mr. Weiss wants. He wants to deter a vote on Justice Kavanaugh's confirmation. This court held in Sutcliffe that conditionality is actually the hallmark of a threat. They're designed to accomplish something. And the last point. I'm sorry, just one last point on the distinction between Bagdasarian and this case. As I think Judge Friedland's question was getting at, Bagdasarian's actually on a different standard of review. Bagdasarian is on that Planned Parenthood post-verdict standard of review. But I don't understand that argument, because if we would eventually say, and this is a hypothetical, but if we were to think that we could never affirm this, even after a jury verdict, because of our searching review, then what's the point of sending it to a jury? And that's what I'm trying to understand. I mean, what would we defer to a jury on, and what would we decide ourselves? Because your examples of, like, there were other violent incidents around that time, that seems something that we could take judicial notice of. So I'm not totally sure still what the jury needs to do before we could assess this case. I think that is right, Your Honor. I think the answer is the kinds of facts that would come out of trial aren't the kinds of things that this court can take judicial notice of. Ex ante, we don't know how the trial would shake out. We don't know the facts. All we have are allegations of a few of the facts that the government brought out. What are the things we couldn't take judicial notice of? Well, for instance, I don't think the widespread, the public widespread news reports, I actually don't think are something that this court would want to take judicial notice of. So that's the kind of thing that the defendant might counter with, with evidence of other kinds of, for instance, like I said before, if the defendant comes forward with reporting about, it's widely reported that D.C. is going, that the resistance is going to travel to D.C. on October 5th. That's a salient question. The government might want to rebut that evidence if we got to trial. That's not something I think that's, that could be a disputed fact. We don't know that it's actually a disputed fact because we haven't had the trial, so we don't know what kinds of arguments the defendant would bring out. But I think this court would benefit from the fuller record, and that's why this court has such a long line of cases saying that the threat inquiry isn't one that you resolve ex-ante before trial. So let me just ask one last question because I want to make sure I understand the government's position. If we take out the turtle, the resistance email address, and let's just say it said sylviabucatini at gmail.com, right? So the email is otherwise identical except without that email address that's listed. Are you taking, is the government taking the position that it could still go to the jury, or does everything turn on the fact that the defendant put in that particular email address? No, absolutely, Your Honor. We think it would still go to the jury, and that's because of the content of the email itself, which as I explained, or tried to explain, I think is suggestive of affiliation with the resistance. No, no, the text of the email, tell me what, it's such a short email. There's zero in the text of the email that says that Ms. Bucatini has anything to do with the resistance. Do you agree with that? No, Your Honor, I disagree. Oh, okay. No, I disagree, Your Honor. What do you see? What I see, Your Honor, is someone saying the resistance is coming to DC to slash your throat, you'll die in the street if you push for this on Friday. To me, that indicates, or at least could indicate to a rational fact finder, that this person actually knows what the resistance is going to do. It's that knowledge. It's not someone just saying this person will have a bullet in the head someday soon. It's some speculation about what might happen. That's just actual knowledge of what's going on. And I think that's akin to what the, I'm sorry, I see I'm out of time. Just one final point. If I send an email to somebody and I say that, I don't know, Al-Qaeda is coming to get you, you're saying that just because I predict what some third-party group or third-party entity is going to do to someone, that that shows that I must have inside knowledge and so therefore I'm a part of it? That's what I'm trying to figure out. No, Your Honor. No, and I think that's the Lincoln case cited in Mr. Weiss's brief. I don't think saying Al-Qaeda is coming to get you is itself a proclamation of affiliation with Al-Qaeda. Knowing the details of where and when Al-Qaeda is going to get you actually could be suggestive of affiliation with Al-Qaeda, particularly where you've identified yourself with Al-Qaeda in your email address. I think that's akin to what this court held in Hanna. The statement in Hanna was all filth herein will be hanged by the feet, along with pictures of President Clinton. That's nobody saying I'm going to come do this. That's saying somebody is going to come do it. It's that passive construction. Somebody is going to do it. And this court held squarely there's sufficient evidence for a jury to find a true threat in that circumstance, notwithstanding that the statements didn't, quote, expressly indicate that the sender was going to kill the president. Why don't we hear from Weiss? Thank you. Good morning, and may it please the court. I'm sorry, Your Honor. I'm looking at the – I'm trying to gauge the time. It seems to be broken. Tonya, can you just reset it? I'll do my best to keep track of it. It's showing 1-11. I'll be brief then. Good morning, and may it please the court. My name is Stephen Kaninger from the Office of the Federal Public Defender. I represent the appellee here, Mr. Howard Weiss, who respectfully asked this court to affirm the district court's order. Your Honors, before the district court this case presented, the question of whether Mr. Weiss's prosecution was impermissible under the free speech clause of the First Amendment, the district court held it was not. Excuse me, it was impermissible. It now presents both a question under the free speech clause and also the Fifth Amendment grand jury clause for the reasons identified in my brief. But because it seems that the court is most focused on the First Amendment issue, I'll deal with that first and address the Fifth Amendment issue if it arises. Your Honors, the district court did not plainly err when it ruled that Mr. Weiss's October 2nd message was not a true threat as a matter of law because the statement predicted that other people would harm Senator McConnell, not that the speaker would. As an initial matter, it's still my position that the government waived this claim under Rule 12 because it did not fairly present it to the district court. But at a minimum, at a minimum, the plain air standard applies here. And I note for the court that the government's reply brief does not even attempt to address this issue under a plain air standard. This suggests that it could meet that standard. But more importantly, the district court did not err plainly or otherwise. Your Honors, this case is governed by two fundamental principles of this court's true threats jurisprudence. The first is that to objectively constitute a threat, the statement must be one that a reasonable person would foresee being interpreted as an expression of an intent to inflict injury or harm by the speaker himself or at a minimum, at a minimum, by someone acting at the behest of the speaker. And this principle was recognized by the court in Castle, which held, noted that to be a true threat under the First Amendment, the statement must be a threat of injury brought about by the defendant or at a minimum, again, by someone who is acting at the behest of the defendant. And the court reemphasized the same concept in Baghdad's area, in which the court held that the defendant's statement was not objectively a threat on its face, on its face and in context, because it conveyed no explicit or implicit threat on the part of the speaker himself to kill or injure President Obama. The second fundamental principle, I think, goes to some of the questions that the panel was asking earlier. And that principle is that while it is proper under an objective true threat analysis for the court to examine context and surrounding circumstances, this court has consistently explained that courts may not use context to alter or embellish the meaning of a statement when its language is plain. That is most clearly demonstrated in the Baghdad's area opinion, where the court held that on its face, again, the statement that President Obama will, quote, have a 50 cal in his head soon, was objectively not a threat because not only did it not articulate that the speaker himself would be carrying out the conduct, but also because the court said the meaning of the words is absolutely plain. The same principle that I use. But the court didn't stop there. I have trouble reading it the way, as strongly as you are, I think, because the court says that thing about the language, but then it goes on to say this is a chat board that's a financial chat board. It's not the kind of context where anyone would really make a threat. I mean, why do all that if the language itself was all that we need to look at? Well, I think that is also directed, Judge Friedland, to the subjective component of the true threat analysis. And, again, my position, to be clear, is not that the court has to ignore context, but when it is looking at the context, it cannot allow the context to change the plain meaning. Okay. Even if that's so, how do we know that the writer here is not part of the resistance? Well, because the language of itself couldn't be any clearer. And I think it's useful to compare this statement to the statement at issue in Baghdad's area. Again, the court is familiar with that. The statement itself says, Ray Obama, F the N word, he will have a .50 cal in the head soon. I suggest that that statement is arguably more open to the interpretation that the speaker himself is going to act there. But this court held otherwise, as a matter of law, on its face, that that was referring to third parties. The speaker, the statement here is expressly identifying third parties as the people who are acting. And the government. But only if the writer is not part of the resistance. Exactly, Judge Friedland. And the government relies singularly and asks this court to rely heavily in isolation on this purported email address that is listed in the message. I think you just heard from your opponent that that's definitely not the position the government has staked out. He literally said that about five seconds ago before you took the podium. I'm sorry, Judge Wofford, could you repeat that? Sorry if I was mumbling there. The government is not taking the position, as you've heard this morning, that it's just the email address. They think that the details and the specificity provided about the violence is itself indicative of inside knowledge, so to speak. Fair enough, Judge Wofford, and I appreciate your point. The government makes two arguments. I think it's fair. My characterization would be more fair if I said it relies very heavily on the email address that was listed on the message. But as to the second point, Judge Wofford, which is the notion that this predicts behavior, I think your question in some ways suggested my response to that, which is, of course, in any circumstance where someone is predicting the behavior of a third party, that could be fun to say, well, they must have inside knowledge of what is going to happen. A prediction by itself is suggesting the person knows what is going to happen. So in any circumstance, you could arguably spin the statement to say, well, that shows that they must know what is going on. And I think the Lincoln opinion actually illustrates this, because the statement there coming from the prisoner in Lincoln stated, among other things, that the followers of bin Laden had a secret army hidden in the United States, that they possessed poison gas, and that they were going to kill President Bush. The implication there from the government's argument, if taken to its logical extreme, is that that prisoner must have inside knowledge of the secret army being hidden in the United States by bin Laden and his followers. But that doesn't follow. It doesn't track. But isn't that because there's some sort of assessment of how plausible is it that this person might know what they're talking about and might be part of the group? And I'm still struggling with whether that's a jury question or a question for us. Should the jury figure out how this should reasonably be interpreted at the time? The general rule is that this is typically a jury question, and I acknowledge that. But both in Planned Parenthood and Hanna, this court has recognized, as has others, that where the statement itself is sufficiently clear, the judge can determine this as a matter of law. And I acknowledge that Planned Parenthood, that Hanna, those cases went to trial, but it's not so limited because, as Judge Paez and Judge Wofford were noting, that we have everything we need to know about this statement. And if there's any concern, Judge Friedland, I'd ask the court to look at the Landum opinion from the Sixth Circuit. There, the court reversed the conviction because it held that the district court erred at the motion to dismiss stage by not concluding, as a matter of law, that the statement did not express the threat. So this can be decided. It is where the circumstances are sufficiently clear, and the court can determine that no reasonable jury, as Judge Breyer did here, that no reasonable jury could look at this and conclude that this was a threat. Or, for example, Judge Friedland, that the speaker is somehow proclaiming membership in the resistance. And I want to focus on the... And so if you were advising Senator McConnell, would you say, just ignore this, don't worry, you don't need a guard for the next few days? Well, I think the effect on Senator McConnell is actually most... is perhaps best illustrated by the fact that his staff sent, if not all eight of the messages from Mr. White, most of the messages to Mr. White. I'm not suggesting that this is not a frightening statement. I'm not suggesting that it might not cause concern for someone. But what I am arguing, and what the district court correctly found, is that this is not a threat as a matter of First Amendment law. And so, Judge Friedland, certainly, it's an unfortunate circumstance. These are unfortunate words. But the Senator's staff, I want to note, undiscerningly forward all of these messages to the threat assessment email, and the government itself does not even contest that seven of the eight messages are not a threat. I mean, but that could be part... Well, I guess they don't... They didn't know that it was the same person, did they, when they forwarded the other ones? The staff didn't know that it was really all from the same Mr. Weiss? I'm not sure, but I think what this goes to, Judge Friedland, is the express language of the statement itself, which is the staff... This isn't in the record. It seems that the staff is trained to forward any of these messages to a threat assessment. And what's telling is that even the government itself doesn't argue that seven of these eight messages are not true threats. And so there is very little to be added. But most importantly, again, this court can look to the plain language of the statute. And when it is evaluated... Can you speak to the email address? I cut you off when you were about to launch into what you had to say on that. Yeah, thank you, Judge Wofford. I think you recognize this is... You suggested it, and I submit that it's true. This email address is obviously made up. And even the government has backtracked somewhat to suggest that it's conceded that it's probably a spoof. But I think one thing that is important, because I believe my... I believe I heard otherwise from my friend, is I think it's important to recognize that the message here did not come from this email address. And I want to make sure that's clear for the court. This is an online form in which Mr. Weiss plugged in various pieces of information. And so this is not a message coming from the email address, turtle, the resistance will be there fried to kill you. And most importantly, Judge Wofford, is that this statement... Because the way that the government presents this is to look at it in isolation, but it needs to be viewed in the content of the entire message. And when that happens, you see that it does nothing more than paraphrase the very first statement of the message itself. It's not a proclamation. It adds nothing on that note. And to suggest that this is somehow a declaration of membership in the resistance is nothing more than speculation. So this court needs... The question, again, as the district court held, is whether a reasonable jury could find that this could conclude that this objectively was a threat. It doesn't allow for speculation. It doesn't allow for parties to say, well, this possibility or that possibility. It still is about a reasonable jury question. And I submit, because this is an element of this offense, it needs to be... The question is whether a reasonable jury could conclude... Could I ask you another background question? So I think the point of all these standards is to try to protect speech that has value and not to protect speech that doesn't have value. And I think you've already acknowledged that this is a somewhat frightening email that Senator McConnell might not like to receive this. So, like, what is the value of this speech? It seems to me that it's pretty frightening and probably not something that public officials should have to receive. Well, Judge Friedland, the First Amendment doesn't protect statements that don't have value under the law of the First Amendment. So true threats, of course I can see that true threats do not have value. But this has value to Mr. Weiss. It is, as the district court concluded and the government has not disputed, political speech. And I recognize that the court may not like this language. I don't endorse this language. But at the end of the day, it reminds me of a quote from, I believe it's Cohen, in which this court said, one man's vulgarity is another man's lyric. And so the question isn't whether this court finds it valuable. The question is whether Mr. Weiss or someone in his circumstance can permissibly express his views using that language. And he can unless and only unless this is a true threat, which I submit that as a matter of law, it is not. Can I ask you just one more question about the Turner case from the Second Circuit that the government relies upon? I thought that might be the government's best case. I recognize it's not binding on us. It's the one involving the threat to the three judges. I think it was Easterbrook, Posner, and Bauer. Do you have anything to say about that case? It seemed helpful, as I said, to the government here. Yes, I do, Judge Paius. I think the first thing I would note is that the Bagdasarian – Judge Wadford. I've been promoted. I thought that the question came from Judge – I'm sorry. Judge Wadford. I apologize. Either way, yes, Judge Wadford, the Turner opinion was recognized. The facts of that case was recognized by the court in Bagdasarian. It's in a footnote in the opinion that I cited for the court. The court in Bagdasarian, this court, stated that it's aware of the facts and it doesn't change its analysis. But I think when you look at the context of the statements at issue in Turner, they're far more than one statement, as we have here, one email. It's a number of statements in which Mr. Turner himself, who's a radio host, used the first person. And I believe if you look at the opinion, you also see a statement in which Mr. Turner is bragging, I would say, or asserting that he has the ability to control other people. He can exert control over his followers who may go out and commit these crimes. That's similar to what this court recognized in Castle, which is a statement can be a threat if it shows that the defendant is going to bring about the conduct. And so where the statement shows the defendant has the power, the ability, the control to bring about the conduct, which is what the speaker in Turner said, that may be a threat. And that does not exist here because this is the express, to borrow the language of Lincoln again, this message does not connote anything that it does not literally say.  I'll give the government two minutes for rebuttal. Thanks very much, Your Honor. Just two quick points. First, happy to address the waiver, plain error question if the court has any questions about it. Just a brief note at pages 39 and 40 and 46 of the record, we preserve the argument that all of the threats, that all of the statements were threats and the district court embraced, the district court described our argument in exactly that way as referring to all of the statements and specifically addressed the October 2nd, 2018 email, and whether that email constituted a true threat.  In which a court of appeals has held that a district court properly or should have dismissed an indictment pre-trial based on a finding that a statement could not have constituted a true threat. In that case, in the Landon case, the statement was a statement about a past event. It was a statement where the speaker was referring to something that already happened. And the court said, as a matter of law, that clearly just can't be a threat. There's one case in this court. There's an unbroken line of cases. This court has never done what the sixth circuit did. And Mr. Weiss hasn't suggested to you that this court has ever done what he's asking you to do in this case. It has never dismissed an indictment on this ground. And the reason is, is because these are, as this court held in Merrill, these are fact intensive questions that are best resolved by a jury in the first instance. Judge Friedland mentioned before what the staff might know, what Senator McConnell's staff might know. Language from Merrill survived Planned Parenthood though? Absolutely, Your Honor. To the extent it was talking about whether a case should be dismissed pre-indictment. I agree that its assessment of the statements that issue in that case was at a more deferential standard of review than would be contemplated by Planned Parenthood. But its statements about what cases should go to a jury wasn't affected at all by Planned Parenthood. Planned Parenthood agrees that true threat cases go to juries in the first instance. It's an unbroken line of precedent in this court. And all we're asking is for this court to apply that same unbroken line here. Okay. With that, thank you both very much for your arguments this morning. The case is submitted at this time.
judges: PAEZ, WATFORD, FRIEDLAND